**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 16-cv-62202-BLOOM/Valle**
**IN ADMIRALTY**

CAPTAIN JANZ STAATS,
an individual,

Plaintiff,

v.

UNIVERSAL MARINE CENTER, INC.,

Intervenor Plaintiff,

v.

M/Y GOLDEN COMPASS,
*a 1982 41.5 meter Motor Yacht, Marshall Islands*
*IMO Number 8737623, her engines, tackle, rigging,*
*dinghies, equipment, appurtenances, furniture, etc.,* in rem,

Defendant/Intervenor Defendant,

D.N.I. PARTNERS, INC.,

Claimant/Intervenor Defendant.
_______________________________________________/

**ORDER**

**THIS CAUSE** is before the Court upon Universal Marine Center's ("UMC") Motion for Payment of *Custodia Legis* Expenses, ECF No. [121] ("Motion"). The Court has reviewed the Motion, all supporting and opposing filings, the record in this case, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

Plaintiff, Captain Janz Staats ("Staats"), filed a Verified Complaint *in rem* under the Federal Maritime Lien Act to foreclose a preferred maritime lien encumbering the M/Y Golden Compass (the "Vessel") for unpaid seaman's wages. *See* ECF No. [1]. Staats also concurrently filed a Motion to Appoint UMC as a substitute custodian pursuant to Local Admiralty Rule

E(10)(c), attaching the Declaration of Bernard Callot who stated UMC would provide adequate facilities and supervision for the M/Y Golden Compass in exchange for $250 per day to keep the vessel in custody and perform verification of the bilges and pumps and another $420 per day for dockage and security. *See* ECF No. [3], [3-1]. On the following day, the Court entered an order appointing UMC as the substitute custodian and ordering it to retain M/Y Golden Compass in its custody for safekeeping for the compensation described in the motion. *See* ECF No. [6]. Months into the litigation, John Jaffe ("Jaffe"), as an Intervening Plaintiff, filed a Motion for Interlocutory Sale of the Vessel, which this Court granted on July 7, 2017. *See* ECF Nos. [98], [100], and [101]. Prior to the sale of the Vessel, its owners filed an Unopposed Emergency Motion requesting a stay of the interlocutory sale because a private buyer was interested in purchasing the Vessel. *See* ECF No. [104]. The Court granted the stay through September 18, 2017. *See* ECF No. [105]. On September 25, 2018, the owners informed the Court of their inability to secure the buyer; therefore, the Court once again ordered the sale of Vessel. *See* ECF Nos. [114] and [115]. At the public sale, Jaffe, as the highest bidder, purchased the Vessel and the Clerk of Court confirmed the sale following the expiration of the objection period. *See* ECF No. [116] and [120].

UMC now seeks payment of its outstanding *custodia legis* expenses prior to its release of the Vessel to Jaffe. *See* ECF No. [121]. The Court notes that, on or about June 30, 2017, Jaffe made an interim payment of *custodia legis* expenses to UMC in the amount of $137,546.08 representing his *pro rata* share of the expenses. *See* ECF No. [96]. Thus, UMC is seeking to collect the amount of *custodia legis* expenses incurred since then, which total $199,015.96 as of

December 15, 2017. *See* ECF No. [129]. Jaffe is in agreement with the payment of outstanding dockage fees as well as other storage fees incurred in connection with storing the Vessel's miscellaneous engine parts, an old dinghy and ship furniture. *See* ECF No. [127]. However, Jaffe objects to the payment of a daily $250 custodial fee, which he characterizes as a "watchman" fee, gate fees, and sales tax. *Id.* In addition, Jaffe asks the Court to stay its Order on this Motion and allow him to inspect the Vessel "to ensure that UMC properly executed their duties as substitute custodian and to adjust and/or credit Jaffe accordingly for any damage incurred." *Id.*

It is well settled that the expenses incurred in operating and caring for a vessel while in the custody of the court are considered "expenses of justice" subject to reimbursement. *See Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561-62 (11th Cir. 1987) (citing *New York Dock Co. v. Steamship Poznan*, 274 U.S. 117 (1927)). *See also Associated Metals & Minerals Corp. v. Alexander Unity MV,* 41 F.3d 1007, 1018 (5th Cir. 1995) (quoting *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 816 (5th Cir. 1982)) ("[S]ervices or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court or an officer of the court . . . should be allowed as *custodia legis* expenses."); *Int'l Ship Repair & Marine Servs., Inc. v. Caribe Sun Shipping, Inc.*, No. 8:12-cv-1651-T-33TGW, 2013 WL 24794 (M.D. Fla. Jan. 2, 2013) (finding that a substitute custodian is entitled to collect actual expenses incurred for the keeping of the vessel, such as storage, moving, boat hire, or other special transportation, or keepers' fees, insurance, and hourly rates for guarding, inventorying and moving).

The question presented is whether UMC is entitled to all expenses claimed as the substitute custodian. As of December 15, 2017, UMC is seeking to recover dockage fees at a daily rate of $420, custodial fees at a daily rate of $250, $8,200 in gate fees, $10,634.40 in sales tax, and $13,625 in storage fees. Because Jaffe does not object to UMC's recovery of dockage fees or storage fees, the Court only addresses the remaining disputed fees. Starting with the custodial fees, the Motion to Appoint UMC as a substitute custodian specified the proposed custodial charge of $250.00 per day—the exact rate UMC now seeks to recover. *See* ECF No. [3], [3-1]. Although Jaffe argues there is no evidence that UMC hired a "watchman" to justify this expense, this Court previously approved such a daily charge and stated that UMC would be entitled to recover it. *See* ECF No. [6]. Further, when assessing interim *custodia legis* expenses, this Court already determined that these fees were recoverable. *See* ECF No. [75]. UMC also presented the Declaration of Captain Bernard Calot in which he confirmed that, during the custodial period, UMC regularly inspected the Vessel, including verifying the bilges and pumps. *See* ECF No. [129-1]. As such, the Court sees no basis to deny UMC its custodial expenses, especially when these expenses have already been approved twice.

As to sales tax, however, UMC does not explain why it is charging a six percent sales tax on custodial services. In his Response, Jaffe points out that it would be inappropriate for UMC to charge sales tax on services as no goods were sold that would justify the imposition of such a tax. *See* ECF No. [127] at 6-7. Neither UMC's Motion nor Reply explains why UMC, as the substitute custodian, is entitled to recover sales tax for its services or provides any authority in

support of such a request. *See* ECF Nos. [121] and [129]. Thus, the Court sees no basis to award sales tax as a *custodia legis* expense.

Next, Jaffe objects to UMC's attempt to tax gate fees. In essence, UMC attempts to recover $8,200 in fees, which appear to be a per-person fee that UMC charged for each individual it allowed to set foot on the Vessel while in its custody. UMC acknowledges that it did not obtain the Court's approval to charge such gate fees in advance, but it nonetheless seeks to recover them from Jaffe. *See* ECF No. [129] at ¶ 2. In response, Jaffe points out that the Order allowing for the interlocutory sale of the Vessel required that any "interested person" who visits, boards, inspects, examines, or surveys the Vessel would do so at his or her sole expense and risk. *See* ECF No. [101]. UMC, in turn, acknowledges this language within the Order but argues that such language does not encompass "the Owner's agents who were preparing the Vessel" for sale. ECF No. [129]. However, UMC, as the party seeking to recover *custodia legis* expenses, has not provided the Court any specific information to demonstrate that the individuals on the boat were not an "interested person" or were otherwise present in a different capacity. The Court acknowledges that UMC has attached a log to its Motion with certain information, but UMC did not provide the Court with any details by which to interpret the log. Further, even if the Court made certain assumptions about the log in an effort to interpret it, the log is incomplete. UMC attempts to recover gate fees for the months of October, November, and December 2016 as well as January, February, March, April, May, June, July, September and October of 2017, but the log only contains entries for the months of November 2016 and January, February, March, May and July of 2017. *See* ECF No. [121-1]. Given UMC's failure to seek Court approval to charge gate

fees and its failure to otherwise demonstrate how such fees constitute *custodia legis* expenses, the Court declines to award them.

Finally, the Court addresses Jaffe's request that the Court stay its decision, allow him the opportunity to inspect the Vessel, and schedule an evidentiary hearing to determine whether UMC allowed the Vessel to deteriorate. Jaffe's request is based on a report from an individual named Rick Pineiro who was apparently allowed to board the Vessel on some unknown occasion(s). *See* ECF No. [127] at 4. The Court declines Jaffe's invitation to further postpone the issue. The July 7, 2017 Order requiring the interlocutory sale of the Vessel required that UMC make the Vessel available for inspection "at the request of any interested person." *See* ECF No. [101] at 2. Jaffe could have inspected the Vessel at any point during the last five months, but he fails to explain why, to this date, he has yet to inspect the Vessel, especially when he successfully bid on it at the public auction. A delay of this decision will only result in increased *custodia legis* fees while this matter is stayed – an outcome that, according to Jaffe, would cause him to "suffer additional economic damages." ECF No. [98] at 2. By means of this Order, the Court is not precluding Jaffe from inspecting the Vessel. In fact, once Jaffe inspects it, if he finds that UMC allowed the Vessel to deteriorate, he may file an appropriate motion with the Court. Until such time, however, the Court declines any invitation to delay this decision on UMC's entitlement to *custodia legis* expenses. Accordingly, it is

**ORDERED AND ADJUDGED** that UMC's Motion, **ECF No. [121]**, is **GRANTED in part and DENIED in part** as follows**:**

1. UMC is awarded dockage fees at a daily rate of $420, custodial fees at a daily rate of $250, and $13,625 in storage fees.
2. The spreadsheets attached to UMC's Motion and Reply reflect that Jaffe has made two payments in the amounts of $137,546.08 and $36,987.75. Therefore, UMC must credit Jaffe for the amount of such payments.
3. On or before **January 20, 2018**, Jaffe must pay UMC all outstanding dockage fees, custodial fees, and storage fees then due consistent with this Order.

**DONE AND ORDERED** in Miami, Florida, this 19th day of December, 2017.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record